**UNITED STATES of America, Plaintiff–Appellee,**

v.

**Daryl NUESCA, Defendant–Appellant.**

**UNITED STATES of America, Plaintiff–Appellee,**

v.

**Daniel Peter KANEHOLANI, Defendant–Appellant.**

**Nos. 90–10578, 90–10643.**

United States Court of Appeals, Ninth Circuit.

Argued and Submitted July 18, 1991.

Decided Sept. 18, 1991.

Hayden Aluli, Acting Federal Public Defender, Honolulu, Hawaii, for defendants-appellants.

Stuart L. Gasner, Asst. U.S. Atty., Honolulu, Hawaii and David C. Shilton, Atty., U.S. Dept. of Justice, Washington, D.C., for plaintiff-appellee.

Before GOODWIN and SNEED, Circuit Judges, and TAYLOR,* District Judge.

GOODWIN, Circuit Judge:

Daryl Nuesca appeals his conviction for taking two green sea turtles off the northern shore of Maui in violation of the Endangered Species Act (the "Act"), 16 U.S.C. §§ 1538(a)(1)(G) and 1540(b) and 50 C.F.R. § 227.71(b) and (d). Daniel Peter Kaneholani appeals his conviction for killing a Hawaiian monk seal.

The appeals of Nuesca and Kaneholani have been heard together, and both convictions are affirmed.

Kaneholani's uncle, Sam Kaleiohi, told a state conservation officer, Wade Ishikawa, that he believed his nephew, Kaneholani, had killed the seal and put some of the meat in the freezer of Kaleiohi's sister, Evelyn Reis. Ishikawa then asked Kaleiohi to accompany him to the Reis home where Reis allowed Kaleiohi to take a sample of the meat Kaneholani had put in her freezer. The officers later determined that the meat was that of a Hawaiian monk seal.

Kaneholani was charged with knowingly taking and possessing parts of a Hawaiian monk seal, an endangered species, in violation of 16 U.S.C. § 1538(a)(1)(B) and (G) and 50 C.F.R. § 222.21. Kaneholani filed pretrial motions to dismiss the superseding information and suppress evidence. Both motions were denied by the magistrate. Later, Kaneholani pled guilty.

Title 16 U.S.C. § 1533(a)(1) authorizes the Secretary of the Interior to list species as either "endangered" or "threatened." If a species is endangered, the Endangered Species Act prohibits "any person subject to the jurisdiction of the United States" from possessing or selling such species. 16 U.S.C. § 1538(a)(1)(A)–(F). The Hawaiian monk seal is an endangered species under the Act. 41 Fed.Reg. 51612 (1976).

If a species is threatened, the Act provides:

It is unlawful for any person subject to the jurisdiction of the United States to ... violate any regulation pertaining to such species or to any threatened species of fish or wildlife listed pursuant to section 1533 of this title and promulgated by the Secretary pursuant to authority provided by this chapter.

16 U.S.C. § 1538(a)(1)(G). The green sea turtle is a threatened species. 50 C.F.R. §§ 227.71 and 227.4(a). Criminal penalties may be imposed for the taking of both the seal and turtle. 16 U.S.C. § 1540(b).

"[A]ny Indian, Aleut, or Eskimo who is an Alaskan Native who resides in Alaska" may, without penalty of law, hunt and take threatened or endangered species for "subsistence purposes." 16 U.S.C. § 1539(e).

"[R]esidents of the Trust Territory of the Pacific Islands" may, without penalty of law, hunt and take green sea turtles "for personal consumption ... if such taking is customary, traditional and necessary for the sustenance of such resident and his immediate family." 50 C.F.R. § 227.72(f).

Nuesca claims that native Hawaiians have aboriginal rights to hunt green sea turtles. Similarly, Kaneholani argues that native Hawaiians have aboriginal rights to hunt Hawaiian monk seals. They argue that the Act does not foreclose these rights because the Act does not apply to them.

I. The Endangered Species Act

Appellants rely on *United States v. Dion*, 476 U.S. 734, 106 S.Ct. 2216, 90 L.Ed.2d 767 (1986), where the Court found that the Eagle Protection Act had abrogated the Yankton Sioux Tribe's treaty right to hunt bald and golden eagles. The Court affirmed the defendant's conviction under the Eagle Protection Act because it found Congress's intention to abrogate the treaty right to be "clear and plain". *Id.* at 738, 106 S.Ct. at 2219–20. The Court did not, however, affirm the conviction under the Endangered Species Act. Nuesca and Kaneholani contend that the Court chose not to convict the defendant under the Endangered Species Act because this statute does not possess the "clear and plain" language

---

* Honorable Gary L. Taylor, United States District Judge for the Central District of California, sitting by designation.

necessary to abrogate Indian hunting rights. Thus, they argue that the Act does not abrogate a native Hawaiian's right to hunt green sea turtles or Hawaiian monk seals.

Nuesca's and Kaneholani's reliance on *Dion* is misplaced. In *Dion*, the Yankton Sioux Tribe had a treaty reserving their exclusive right to hunt and fish on their land. *Id.* at 737, 106 S.Ct. at 2219. Neither Nuesca nor Kaneholani can point to a treaty giving native Hawaiians a right to hunt green sea turtles or Hawaiian monk seals. Nor can they cite evidence that hunting turtles or seals is a traditional aspect of native Hawaiian life. Before the magistrate, Kaneholani could identify only one instance of a seal eaten by natives, and that episode had no relevant time frame. Thus, abrogation of a treaty by the Endangered Species Act is not an issue in this case.

II. The Endangered Species Act and the Equal Protection Claim

■ Nuesca and Kaneholani next argue that if the Endangered Species Act is applicable, then native Hawaiians should be treated like native Alaskans, another indigenous people of the United States. Appellants argue that all indigenous groups should be afforded analogous hunting privileges under the Act and that all deserve a special trust relationship with the federal government.

Nuesca and Kaneholani argue that the exception in section 1539 of the Endangered Species Act, exempting one aboriginal group while withholding the same immunity from a similarly situated group, violates their constitutional right to equal protection. "The Equal Protection Clause directs that 'all persons similarly circumstanced shall be treated alike.' " *Plyler v. Doe*, 457 U.S. 202, 216, 102 S.Ct. 2382, 2394, 72 L.Ed.2d 786 (1982) (quoting *F.S. Royster Guano Co. v. Virginia*, 253 U.S. 412, 415, 40 S.Ct. 560, 561–62, 64 L.Ed. 989 (1920)). They argue that since federal courts have held that the term "American Indian" may include other aborigines of the United States, such as native Alaskans, the term should be extended to native Hawaiians. *See Pence v. Kleppe*, 529 F.2d 135, 138 n. 5 (9th Cir.1976) (holding that native Alaskans, as defined in the Alaska Native Allotment Act, included Indians, Aleuts and Eskimos in and native to Alaska). They contend that because this circuit has recognized a form of sovereignty in native Alaskans living in Alaskan villages, it must follow that native Hawaiians merit "sovereign" status. *See Native Village of Venetie I.R.A. Council v. Alaska*, 918 F.2d 797, 805 (9th Cir.1990) ("sovereignty of Indian tribes in the contiguous 48 states referred to as creating similar relationships in Alaskan native villages").

Whatever may be the subsistence needs of the artic hunters, native Hawaiians are not similarly circumstanced to native Alaskans. None of the similarities cited by the appellants are relevant for an exception to the Endangered Species Act. Although both groups are indigenous to regions now a part of the United States, Congress had ample reasons to create exceptions to certain laws for the benefit of native Alaskans, and to refrain from creating exceptions for other groups. It does not follow that Congress must create similar exceptions for persons indigenous to Hawaii. Neither Nuesca nor Kaneholani has shown that native Hawaiians, as a group, depend upon the hunting of endangered and threatened species for subsistence. Appellants' equal protection claims are groundless.

Nuesca and Kaneholani ask us to apply a "strict scrutiny" analysis to their equal protection question. They argue that because the classification of 16 U.S.C. § 1539(e) involves a "suspect classification," namely one that is based on race, the discrimination can be justified only if it passes strict scrutiny.

The Endangered Species Act does not differentiate between aboriginal groups based on race. The Act's exemption is based upon food supply and culture. Some native Alaskans depend upon hunting certain species for their livelihood; hunting is engrained in their culture. Congress has not been called upon to decide whether any surviving native Hawaiians subsist on the

hunting of endangered animals. The classification Congress made for Alaska is not suspect, and the exceptions in question need only withstand a "rational basis" inquiry. Strict scrutiny has no application to this case. Under a rational basis standard, "[r]eviewing courts should 'seek only the assurance that the classification at issue bears some fair relationship to a legitimate public purpose.'" *Hoffman v. United States*, 767 F.2d 1431, 1436 (9th Cir.1985) (quoting *Plyler*, 457 U.S. at 216, 102 S.Ct. at 2394).

The rational basis test is satisfied here. Thus, the district court correctly concluded in both cases that the differential treatment between Alaskan and Hawaiian natives is justified by the great importance of subsistence hunting to the lives and cultures of some native Alaskans, an importance not established with respect to any significant number of native Hawaiians.

III. The Code of Federal Regulations and the Equal Protection Claim

■ Similarly, we hold that the exception within 50 C.F.R. § 227.72(f) does not violate equal protection. Nuesca argues that the regulation discriminates against native Hawaiians by arbitrarily denying them a subsistence-taking exemption to hunt green sea turtles while providing one to a limited class of native Pacific Islanders. We find no such arbitrary denial.

In 1983, the National Marine Fisheries Service ("NMFS") reviewed the regulations concerning the taking of green sea turtles for subsistence purposes. The NMFS determined that a subsistence authorization could be allowed only if an existing culture was dependent on the taking of sea turtles for its continued existence and that the turtle stock involved would not be jeopardized by subsistence taking. The native Hawaiian culture has no such dependence. Thus, the exemption was not arbitrarily denied to native Hawaiians; rather, it was denied because native Hawaiians, as a group, do not depend on this species for subsistence.

Nuesca raises the same equal protection argument against the Federal Regulations that he and Kalehomani raised against the Endangered Species Act, and the argument fails for the same reasons. The classification is not based on race; instead, it is based on the fact that native Pacific Islanders on some, but not all, islands depend on hunting these species for subsistence. Thus, as discussed above, the rational basis test applies.

This test is satisfied because it was reasonable for the NMFS to conclude that a handful of native Pacific Islanders thousands of miles West of Hawaii rely on certain endangered or threatened species for subsistence purposes while others do not. The exemption is constitutional, and Nuesca does not fall within it.

We hold that both Nuesca and Kaneholani are subject to the proscriptions of the Endangered Species Act. Neither appellant falls within the exception to the Act, 16 U.S.C. § 1539(e), nor does the Act's exception for native Alaskans violate the equal protection clause. The Act applies to Hawaiians, native or immigrant, taking and possessing an endangered or threatened species, and it was correctly applied to both Nuesca and Kaneholani.

IV. The Fourth Amendment Search and Seizure Claim

We hold that the magistrate correctly denied Kaneholani's motion to suppress the seal meat obtained from Reis's freezer because Kaneholani did not have a reasonable expectation of privacy necessary to support a Fourth Amendment claim against an unreasonable search and seizure.

"A 'search' occurs when an expectation of privacy that society is prepared to consider reasonable is infringed." *United States v. Jacobsen*, 466 U.S. 109, 113, 104 S.Ct. 1652, 1656, 80 L.Ed.2d 85 (1984). A Fourth Amendment claim can be asserted only when the individual proves that he has a "legitimate expectation of privacy." *Rawlings v. Kentucky*, 448 U.S. 98, 104, 100 S.Ct. 2556, 2561, 65 L.Ed.2d 633 (1980). "The proponent of a motion to suppress has the burden of establishing that his own Fourth Amendment rights were violated by the challenged search or seizure." *Rakas*

259

v. Illinois, 439 U.S. 128, 131 n. 1, 99 S.Ct. 421, 424 n. 1, 58 L.Ed.2d 387 (1978).

One aspect in determining whether an individual has a reasonable expectation of privacy in a place searched is whether he could reasonably assert control or supervision over, or exclude others from access to, the place. *United States v. Kuespert*, 773 F.2d 1066 at 1068 (9th Cir. 1985). As the district court found, Kaneholani merely had permission to store the meat in Reis's freezer, not the right to exclude others from the freezer.

Kaneholani's contention that his expectation of privacy rested with the use of opaque bags in which the seal meat was stored is unpersuasive. Kaneholani was not the person who wrapped the meat in the opaque bags. Reis testified at trial that when Kaneholani gave her the meat it was in plastic bags from the grocery store, unwrapped, with the top of the bag left open. Reis testified that she wrapped the meat in the dark plastic garbage bag, tied it up and placed it in her freezer. Kaneholani cannot rely on Reis's actions to establish that he had a reasonable expectation of privacy. *See Walter v. United States*, 447 U.S. 649, 658 n. 12, 100 S.Ct. 2395, 2402 n. 12, 65 L.Ed.2d 410 (1980) (plurality opinion of Stevens, J.) ("it is difficult to understand how petitioners' subjective expectation of privacy could have been altered in any way by subsequent events of which they were obviously unaware"). Kaneholani can rely only upon his own reasonable expectations of privacy, as evidenced by the actions he took to ensure these expectations. Kaneholani had no reasonable expectation that Reis would repack his seal meat in a dark plastic garbage bag. The magistrate correctly denied Kaneholani's motion to suppress the seal meat.

## V. The Jencks and *Brady* Claims

Kaneholani asserts two further defenses that have no support in the record.

"Jencks Act determinations are reviewed for an abuse of discretion." *United States v. Moody*, 778 F.2d 1380, 1383 (9th Cir.1985) (citations omitted). Factual findings underlying the district court's ruling "may not be disturbed unless clearly erroneous." *United States v. Goldberg*, 582 F.2d 483, 486 (9th Cir.1978). There was no abuse of discretion and no dispute about facts.

Under *Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), material is reviewed for "any reasonable possibility that the suppressed evidence would have materially affected the verdict." *United States v. Lehman*, 792 F.2d 899, 901 (9th Cir.1986). Unless there is such a possibility, a new trial is not required. No relevant evidence was withheld or suppressed.

We have considered the arguments about the Jencks Act and the *Brady* materials and find no support in the record for either point.

AFFIRMED.