# FOR PUBLICATION

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

UNITED STATES OF AMERICA,
             *Plaintiff-Appellee,*

v.

NICOLAI CAYMEN, aka Andre
Patrick Payne,
             *Defendant-Appellant.*

No. 03-30365

D.C. No.
CR-03-00002-RRB

OPINION

Appeal from the United States District Court
for the District of Alaska
Ralph R. Beistline, District Judge, Presiding

Argued and Submitted
July 6, 2004—Anchorage, Alaska

Filed April 21, 2005

Before: Cynthia Holcomb Hall, Andrew J. Kleinfeld, and
Kim McLane Wardlaw, Circuit Judges.

Opinion by Judge Kleinfeld

**COUNSEL**

Mary C. Geddes, Assistant Federal Defender, Anchorage, Alaska, for the appellant.

Steven E. Skrocki, Assistant U.S. Attorney, Anchorage, Alaska, for the appellee.

**OPINION**

KLEINFELD, Circuit Judge:

We consider a motion to suppress evidence found on the hard drive of a computer that had been obtained by fraud.

**Facts**

We take the facts from the hearing on the motion to suppress and the district court's decision on the motion.

Caymen worked as a desk clerk at a hotel in Ketchikan, one of Alaska's larger cities, but as cities go, a small one, with a population of about 7,500 people. A local business supply store called the police after a woman complained that the

store had charged her credit card $1,654 for a computer that she had not purchased. The store discovered that Caymen had placed a telephone order for the computer using a credit card, and when Caymen picked it up the shop clerk had not asked him for any identification. Because the local business supply stores share information about customers who defraud them, the store clerk was able to tell the police that Caymen had tried to buy a computer from one of their competitors, also with credit card trickery. At the second store, Caymen had first tried to use a credit card that was rejected, then he used a different card that worked, but he later cancelled the order, saying that he had already obtained the computer he needed.

The police got a search warrant for the house where Caymen rented a room to look for the laptop and evidence of credit card fraud. The police discovered the laptop in Caymen's room. It was connected to a desktop tower, which did not have its own monitor (evidently he used the laptop as its monitor), and both computers were connected to a high-speed DSL internet connection. The police officer could see where a rental sticker had been torn off the back of the tower. It turned out that Caymen had rented the desktop tower from a store, but never made any payments and never returned it. The police then got a second warrant to seize the desktop tower.

Caymen was present during the search. He claimed that he had no idea what the police were talking about when they said that the laptop had been purchased with someone else's credit card. Caymen insisted that he had bought it with his own credit card. During the search, the police found documents showing that Caymen had changed his name from Andrew Patrick Payne. When the police ran the old name through the law enforcement database, they found that Caymen had outstanding warrants in two other states (which Caymen denied having), and that he had prior convictions for the possession of child pornography and unlawful acts with minors. In Caymen's wallet, the police found two receipts for the purchase and subsequent cancellation of the computer that Caymen had

ordered from the second store. Printed on those receipts was yet another credit card number that did not belong to Caymen. Again, Caymen claimed not to know how this could have happened. The police also found some receipts containing the names and credit card information of guests who had stayed at the hotel where Caymen worked.

After seizing the laptop, the police called the business supply store where Caymen had gotten it to ask if they could look at it before returning it. The store's owner not only consented to the police request, but he specifically requested that the police search the laptop's hard drive because he didn't "want to have anything [on the computer] that shouldn't be there." The police looked on the laptop's hard drive for evidence of credit card fraud, but instead found images of boys, who were around ten or twelve-years-old, exhibiting their genitals for the camera. The police immediately stopped their search of the hard drive so that they could obtain a third search warrant, because they now had probable cause to believe that Caymen possessed child pornography. Using the third warrant, the police looked at the hard drives and storage media from both the laptop and tower computers for evidence of possession of child pornography. They found plenty — the hard drives were filled with sexually explicit images of children.

Caymen was indicted for possession of child pornography and fraudulent use of a credit device. He moved to suppress the evidence of the sexual photographs of children on the laptop. Caymen's theory was that the police had no constitutional justification for their first look on the laptop's hard drive, and that all the subsequently found child pornography was "fruit of the poisonous tree." Caymen's motion was denied. He pleaded guilty to possession of child pornography, but reserved for appeal the question of whether his motion to suppress was properly denied. The fraudulent use of a credit device charge was dismissed (it was apparently pursued by the state in state court, but our record does not include any

state disposition). Caymen now appeals the district court's denial of his motion to suppress.

## Analysis

We review the denial of Caymen's motion to suppress de novo, and the underlying factual findings for clear error.[1]

The parties argue the case exclusively in terms of whether Caymen has standing to assert a Fourth Amendment violation stemming from the initial police search of the laptop. We need not decide whether other grounds might have justified the examination of the laptop hard drive, or whether consent or a warrant (beyond the warrants the police already had) was needed for the first examination of the hard drive, because no such issues are raised in Caymen's motion to suppress, the district court's denial of that motion, or the appellate briefs.

Caymen attacks the initial police examination of the laptop's hard drive as a warrantless search. The police had neither Caymen's consent nor a warrant to look on the hard drive, and since the laptop was in police possession (and had been for weeks), the police could easily have sought and obtained a warrant. Caymen argues that the consent to search the laptop given by the business supply store was irrelevant because the computer belonged to Caymen and not to the store. Caymen had plainly not authorized the shop owner to consent to examination of the hard drive of his computer, so the line of third party consent cases[2] has no bearing on this case. The laptop was in police possession pursuant to the first search warrant when the police looked at it, so this case does

---

[1]*United States v. Jones*, 286 F.3d 1146, 1150 (9th Cir. 2002).

[2]*See United States v. Matlock*, 415 U.S. 164 (1974); *United States v. Davis*, 332 F.3d 1163 (9th Cir. 2003); *United States v. Fultz*, 146 F.3d 1102 (9th Cir. 1998); *United States v. Welch*, 4 F.3d 761 (9th Cir. 1993).

not raise the questions at issue in cases where a guest is still using a room that he obtained by fraudulent use of a credit card.[3]

Caymen argues that because he "neither conceded nor was convicted of wrongdoing in relationship to the transaction" involving the laptop, we have to proceed on the assumption that the laptop was his, as he claimed when the police conducted the search. Thus, Caymen would have us decide the case under the assumption that the laptop belonged to Caymen, that he had legitimately purchased and used it for several months, and that the police examination was illegal because it was done without Caymen's consent and without a warrant. Caymen's proposed mode of analysis is incorrect, however, because of the clearly established law on a defendant's burden to establish a Fourth Amendment violation.

[1] The Supreme Court held in *United States v. Rakas*[4] that "the proponent of a motion to suppress has the burden of establishing that his own Fourth Amendment rights were violated by the challenged search or seizure."[5] In *United States v. Freitas*,[6] we held that "[w]here a defendant fails to meet this burden in the suppression hearing, he cannot prevail on appeal even though the Government also did not establish the contrary, unless, of course, the record on appeal independently demonstrates the requisite standing."[7] This is in accord with the general view that "the burden of proof is on the defendant" to demonstrate that he has a reasonable expectation of privacy.[8]

---

[3]*See United States v. Cunag*, 386 F.3d 888 (9th Cir. 2004); *United States v. Bautista*, 362 F.3d 584 (2004).

[4]*United States v. Rakas*, 439 U.S. 128 (1978).

[5]*Id.* at 131 n.1; *see United States v. Nuesca*, 945 F.2d 254, 258 (9th Cir. 1991).

[6]*United States v. Freitas*, 716 F.2d 1216 (9th Cir. 1983).

[7]*Id.* at 1220 n.2.

[8]*See* Wayne R. LaFave, *Search and Seizure: A Treatise on the Fourth Amendment* § 11.3(e), at 218 (4th ed. 2004); *see also United States v. Miller*, 84 F.3d 1244, 1249-50 (10th Cir. 1996); *United States v. Betancur*, 24 F.3d 73, 76-77 (10th Cir. 1994).

This is not to say that the defendant has to establish some sort of property interest. The "capacity to claim the protection of the Fourth Amendment depends not upon a property right in the invaded place,"[9] but rather "whether the individual by his conduct has exhibited an actual (subjective) expectation of privacy,"[10] and further, "whether the individual's subjective expectation of privacy is one that society is prepared to accept as reasonable."[11] Thus we do not consider whether title to the laptop passed from the store to Caymen.

[2] Although Caymen bases his claim on the fact that he "neither conceded nor was convicted of wrongdoing" in connection with the laptop, the record nonetheless shows that he has never carried his burden of proof to establish an "acceptable" expectation of privacy in the laptop. The police officer testified at the evidentiary hearing on the motion to suppress. Caymen did not. Caymen did not submit an affidavit or other evidence supporting his claim that he had honestly purchased and owned the laptop. While Caymen did make such a claim to the police during their search of his room, that claim was, of course, unsworn. While at the evidentiary hearing on the motion to suppress the district court never orally recited anything to the effect of "I find that Caymen obtained the laptop by fraud," the district court's written decision says so clearly enough. The written order denying the motion to suppress says "[d]ue to the laptop being purchased by the fraudulent use of a credit card, Caymen did not have a reasonable expectation of privacy in the laptop and cannot challenge the legitimacy of the search." The district court repeats its finding of fact that the laptop "was fraudulently purchased" several times in several ways, and says the case is like "a person going into a computer store, stealing a computer, claiming

---

[9]*Rakas*, 439 U.S. at 143; *see also Rawlings v. Kentucky*, 448 U.S. 98, 105 (1980); *United States v. Nadler*, 698 F.2d 995, 999 (9th Cir. 1983).

[10]*Smith v. Maryland*, 442 U.S. 735, 740 (1979) (citations and internal quotations omitted).

[11]*Id.*

that he paid for it, and using it as if it was his own. The laptop was not legitimately or lawfully his." All the evidence supported this finding. The district court's finding was not clearly erroneous.

[3] The Fourth Amendment does not protect a defendant from a warrantless search of property that he stole, because regardless of whether he expects to maintain privacy in the contents of the stolen property, such an expectation is not one that "society is prepared to accept as reasonable."[12] A legitimate expectation of privacy means more than a subjective expectation of not being discovered.[13] We held in *United States v. Wong*[14] that a person lacks a reasonable expectation of privacy in the contents of a laptop computer he stole.[15] Similarly, several of our sister circuits have held that a person who steals a car does not have a reasonable expectation of privacy that entitles him to suppress what is found in a search of the stolen car.[16] Whatever possessory interest a thief may have, that interest is subordinate to the rights of the owner,[17] and in this case, the business supply store, from which Caymen fraudulently obtained the computer, not only consented to the police examination of the laptop's hard drive, but also specifically requested that the police examine it before returning it, to protect the store from accidentally coming into pos-

---

[12]*Id.*

[13]*See Rakas*, 439 U.S. at 143 n.12 ("A burglar plying his trade in a summer cabin during the off season may have a thoroughly justified subjective expectation of privacy, but it is not one which the law recognizes as 'legitimate.' ").

[14]*United States v. Wong*, 334 F.3d 831 (9th Cir. 2003).

[15]*Id.* at 835, 839.

[16]*See United States v. Tropiano*, 50 F.3d 157, 161 (2d Cir. 1995); *United States v. Wellons*, 32 F.3d 117 (4th Cir. 1994); *Betancur*, 24 F.3d at 76-77; *United States v. Lanford*, 838 F.2d 1351, 1353 (5th Cir. 1988); *United States v. Hensel*, 672 F.2d 578, 579 (6th Cir. 1982); *United States v. Hargrove*, 647 F.2d 411, 413 (4th Cir. 1981).

[17]*See Terry v. Enomoto*, 723 F.2d 697, 699 (9th Cir. 1984).

session of material the store did not want — like child pornography.

**[4]** We see no ground on which to distinguish property obtained by fraud from property that was stolen by robbery or trespass, and counsel have offered no authorities suggesting a distinction. "An essential element of individual property is the legal right to exclude others from enjoying it,"[18] and it cannot be said that a thief has the right to exclude the true owner from the contents of property obtained by fraud. Obtaining the computer by fraud did not entitle Caymen to exclude the store from the hard drive. The common law long recognized larceny by trick or false token where the thief induced the rightful owner to deliver the property by trickery.[19] A fake credit card is but a plastic and electronic false token.

**[5]** Of course, what matters is not the details of the common law of larceny. What matters is a reasonable expectation of privacy that society is prepared to accept as reasonable,[20] and one who takes property by theft or fraud cannot reasonably expect to retain possession and exclude others from it once he is caught. Whatever expectation of privacy he might assert is not a legitimate expectation that society is prepared to honor. Because, as the district court found, Caymen obtained the laptop computer by fraud, he had no legitimate expectation of privacy in the contents of the hard drive.

---

[18]*Int'l News Serv. v. Associated Press*, 248 U.S. 215, 250 (1918) (Brandeis, J., dissenting).

[19]*See*, *e.g.*, *King v. Pear*, 1 Leach 212, 168 Eng. Rep. 208 (Cr. Cas. Res. 1779) (discussed in *Bell v. United States*, 462 U.S. 356, 359 (1983)); William L. Clark, Jr. & William L. Marshall, *A Treatise on the Law of Crimes* § 12.29, at 946 (7th ed. 1967); Joshua Dressler, *Understanding Criminal Law* § 32.04[5], at 552-53 (2001); Wayne R. LaFave & Austin W. Scott, Jr., *Handbook on Criminal Law* § 85, at 627 (1972); Rollin M. Perkins & Ronald N. Boyce, *Criminal Law* 305 (3d ed. 1982).

[20]*See Smith*, 442 U.S. at 740.

**AFFIRMED.**