**NOT FOR PUBLICATION**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

FILED

DEC 18 2017

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

| | |
|---|---|
| UNITED STATES OF AMERICA, | No. 16-50190 |
| Plaintiff-Appellee, | D.C. No. 2:15-cr-00176-AB-1 |
| v. | |
| MICHAEL CHONG, | MEMORANDUM[*] |
| Defendant-Appellant. | |

Appeal from the United States District Court
for the Central District of California
Andre Birotte, Jr., District Judge, Presiding

Argued and Submitted October 2, 2017
Pasadena, California

Before:  RAWLINSON and N.R. SMITH, Circuit Judges, and KORMAN,[**]
District Judge.

In March 2015, two LAPD officers on the lookout for stolen cars found

Michael Chong in a parking lot, sitting alone in the front passenger seat of a car with

mismatched plates. They ordered him out, and as he complied, he dropped materials

---

[*]     This disposition is not appropriate for publication and is not precedent
except as provided by Ninth Circuit Rule 36-3.

[**]     The Honorable Edward R. Korman, United States District Judge for
the Eastern District of New York, sitting by designation.

from his lap, some falling into the passenger area and some falling onto the lot. The officers told Chong to leave the fallen items alone, frisked him for weapons, and found a master mail key in his pocket. They then gathered the fallen items. These would be summarized in the police report as "mail, checks and various paperwork with various names"; they included a notebook and—in names other than Chong's—financial mail, blank and filled-out checks, an agreement for a line of credit, three credit (or debit) cards, two driver's licenses, a California Department of Real Estate identification card, two credit-score reports, and an IRS form W-2. After discovering additional evidence that the car was stolen, the officers arrested Chong and the car's driver. At the station, the driver confessed that she and Chong had been stealing from the mail and fraudulently cashing checks.

The district court ruled that the initial frisk of Chong was illegal, a point the Government does not dispute. Nonetheless, the court primarily denied Chong's motion to suppress the mail key and the material that fell as he got out of the car. Chong pleaded guilty conditionally and was sentenced to twenty-five months in prison. He now appeals the partial denial of the suppression motion.[1] Chong has served his prison sentence and is now serving a three-year term of supervised release.

---

[1] We discuss only those aspects of the denial that Chong challenges on appeal. The Government does not cross-appeal the partial grant.

We reject Chong's argument that he has standing to challenge the search and seizure of any stolen items. He has no standing to challenge the search of a public lot, *see, e.g.*, *Florida v. White*, 526 U.S. 559, 565–66 (1999); or a stolen car, *see, e.g.*, *United States v. Pulliam*, 405 F.3d 782, 786 (9th Cir. 2005); or stolen items themselves, *see, e.g.*, *United States v. Caymen*, 404 F.3d 1196, 1199–1200 (9th Cir. 2005). *Arizona v. Hicks*, 480 U.S. 321, 324–25 (1987), on which Chong relies, reaffirmed an expectation of privacy in the home, not in stolen goods. *See Kyllo v. United States*, 533 U.S. 27, 37–38 (2001). Nor does Chong have standing because the items were originally on his lap: they were not seized from his lap. Rather, he dropped them while following an order that he does not dispute was lawful.

Although Chong does not have standing to challenge the search and seizure of the fallen materials directly, he can still suppress them if they are "fruit" of the initial, illegal frisk, *Nix v. Williams*, 467 U.S. 431, 441 (1984). In Chong's view, without the frisk, the police would not have found the mail key; without the mail key and its implication of mail theft, it was likely that "the officers would have continued investigating the [car's] plates and paid no attention to the papers its passenger dropped."

This is implausible. Police are inquisitive, if not by temperament and training, then at least in encountering a car that is likely stolen,[2] because stolen cars are frequently used to commit other crimes. Indeed, it was precisely for this reason that the district court found it "entirely reasonable under the circumstances for [the officers] to order [Chong] out of the car" for their own safety in the first place. *United States v. Chong*, CR 15-00176-AB, 2015 WL 5156438, at *6 (C.D. Cal. Sept. 2, 2015). On the facts here, even without the key, it is inconceivable that the officers would have paid no attention to the mail, checks, credit cards, and driver's licenses that Chong had begun dropping as he got out of a car with mismatched plates. They effectively seized these items even before the frisk, and the simple act of the officers gathering the items would have begun to reveal their suspicious nature and suggested the need for closer inspection. There is no counterfactual version of this story reflecting what Chong implies (but does not state): that the officers would have simply handed the materials back to him without some kind of examination.

---

[2] As the district court observed, "the 'traffic violation' at issue—using forged or stolen license plates—is more indicative of possible criminality than other traffic violations like a broken tail light or speeding. Use of a mismatched license plate creates a strong (and reasonable) presumption that the vehicle, the license plate, or both are stolen." *United States v. Chong*, CR 15-00176-AB, 2015 WL 5156438, at *6 (C.D. Cal. Sept. 2, 2015).

That leaves the key. This is a close question. Although one would not expect the officers to fully inventory Chong's items in the parking lot as they eventually did at the station, we conclude that, in the circumstances, even routine examination of the material at the scene would have provided probable cause to arrest Chong for theft. In turn, as the district court correctly concluded, the officers inevitably would have found the mail key in a post-arrest search. Thus, regardless of the initial frisk's legality, the officers would have found the key because they would have reviewed the fallen materials after Chong dropped them. As the evidence inevitably would have been discovered by independent and lawful means, the district court was correct to deny the motion to suppress on this ground as well. *See United States v. Polanco*, 93 F.3d 555, 561–62 (9th Cir. 1996).

**AFFIRMED**.