**NOT FOR PUBLICATION**

**FILED**

**UNITED STATES COURT OF APPEALS**

**FOR THE NINTH CIRCUIT**

AUG 27 2025

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

| | |
|---|---|
| UNITED STATES OF AMERICA, | No. 23-2342 |
| Plaintiff - Appellee, | D.C. No. 3:18-cr-00475-IM-1 |
| v. | |
| DONTAE LAMONT HUNT, | MEMORANDUM[*] |
| Defendant - Appellant. | |

Appeal from the United States District Court
for the District of Oregon
Karin J. Immergut, District Judge, Presiding

Argued and Submitted March 31, 2025
Portland, Oregon

Before: CHRISTEN and LEE, Circuit Judges, and BENCIVENGO, District Judge.[**]

Appellant Dontae Hunt raises several challenges to his conviction and

sentence for possession with intent to distribute fentanyl analogue, conspiracy to

---

[*] This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.

[**] The Honorable Cathy Ann Bencivengo, United States District Judge for the Southern District of California, sitting by designation.

possess with intent to distribute and to distribute a controlled substance, unlawful possession of firearms, and laundering of monetary instruments. We rejected some of Hunt's challenges in an accompanying opinion, and we now dismiss the remaining challenges in this memorandum disposition.

Our jurisdiction arises under 28 U.S.C. § 1291. We review de novo the denial of a motion for a *Franks*[1] hearing. *United States v. Norris*, 942 F.3d 902, 907 (9th Cir. 2019). Likewise, we review de novo whether the district court used a proper method to approximate the quantity of drugs that a defendant trafficked. *United States v. Scheele*, 231 F.3d 492, 497 (9th Cir. 2000). We affirm the district court.

1. <u>*Franks* hearing.</u> Hunt argues the district court erred by denying him a *Franks* hearing to determine whether probable cause supported the premises search warrant for the Dekum Street residence. He argues that the premises warrant was invalid because it relied on evidence obtained from allegedly defective geolocation warrants. Those geolocation warrants were tainted because law enforcement had presented testimony of a confidential informant without disclosing her prior conviction of lying to the police. We disagree.

Admittedly, the government's failure to disclose the first confidential informant's full criminal history in seeking the geolocation warrants was egregious. Further, subsequent geolocation warrants likely represent the fruit of the first

---

[1]      *Franks v. Delaware*, 438 U.S. 154 (1978).

allegedly defective warrant.  But to receive a *Franks* hearing, Hunt must show, *inter alia*, that the affidavit supporting the September premises warrant contained a false or misleading statement that was material, *i.e.*, necessary for the finding of probable cause.  *Norris*, 942 F.3d at 910.  Hunt cannot make this showing because even after excluding all information derived from the geolocation warrants and the first informant, sufficient evidence still supports probable cause for the September premises warrant.

First, a second confidential informant—with no known connection to the first confidential informant—identified Hunt by name and testified that he continued to sell drugs and to "store[] cash at residences belonging to female acquaintances."  The record gives us no reason to doubt the lack of a relationship between the informants.  Second, the police knew Hunt was shot five times under suspicious circumstances just weeks after his recent release from prison where he served a sentence for drug trafficking offenses.  Police also retrieved two guns from his girlfriend immediately after the shooting.  These facts increase the probability he had ongoing connections to the drug trade.  *See Hart v. Parks*, 450 F.3d 1059, 1066 (9th Cir. 2006) (prior conviction for similar crime may support probable cause).  Third, a pole camera outside the Dekum Street residence recorded Hunt engaging in unusual countersurveillance behavior (*e.g.*, extensive checking of surroundings) that drug dealers commonly use to avoid law enforcement detection.  This body of evidence

collectively establishes probable cause for the premises search warrant.

2. <u>Amount of fentanyl analogue.</u>  Hunt claims the district court erred when it found Hunt trafficked over 300 grams of fentanyl analogue because the court relied on an erroneous assumption that each of the estimated 2,858 trafficked pills contained fentanyl analogue.  We disagree.  The district court based its finding on an abundance of reliable evidence and on multiple conservative assumptions to avoid any overestimation.

Any approximation must meet three criteria.  *United States v. Kilby*, 443 F.3d 1135, 1141 (9th Cir. 2006) (citing *United States v. Culps*, 300 F.3d 1069, 1076 (9th Cir. 2002)).  First, the method used must bear sufficient indicia of reliability to support probable accuracy.  *Id.*  Second, the government must prove the quantity of drugs trafficked by a preponderance of the evidence.  *Id.*  Third, because of the inherent uncertainty in any approximation, "the district court must err on the side of caution" in its calculations.  *Id.* (quoting *Culps*, 300 F.3d at 1076).

Here, the district court first used reliable methods when it found the amount of fentanyl.  It found that Hunt trafficked *at least* 2,858 pills based on 49 pills seized at his residence, trial testimony from co-conspirators that Hunt supplied between 2,320 and 2,620 pills, and text messages Hunt received to arrange the sale of, at minimum, 489 pills.  Hunt does not contest the reliability or accuracy of the estimate of 2,858 pills.

Second, the preponderance of the evidence shows that Hunt's pills contained fentanyl analogue. A co-conspirator testified at trial that Hunt admitted that the 200 to 500 pills he supplied to her contained counterfeit fentanyl. Tests done at the Oregon State Crime Laboratory also provide reliable evidence that the sampled pills contained fentanyl analogue.

Finally, the district court erred on the side of caution because its estimation relied on multiple conservative assumptions. First, the district court did not include the pills Hunt flushed down the toilet as police searched his residence. Second, the court also did not include the pills Hunt likely sold to obtain $120,000 that has no legitimate and identifiable source. Third, its calculation assumes that a co-conspirator only received 200 pills from Hunt, even though the co-conspirator testified to receiving 200 to 500 pills. Fourth, the seized pills weighed between 0.105 grams and 0.12 grams, and even assuming each pill only weighed 0.105 grams, Hunt still would have trafficked over 300 grams of fentanyl analogue. Therefore, we hold that even erring on the side of caution, the district court correctly determined that Hunt trafficked over 300 grams of fentanyl analogue.

3. Armed Career Criminals Act. Hunt also argues the district court erred by treating his prior conviction under ORS § 475.922 (2001) as a serious drug offense for purposes of the Armed Career Criminals Act. *See* 18 U.S.C. § 924(e)(2)(A)(ii). But Hunt's 300-month sentence falls squarely within the 262 to 327 months range

the district court found would apply under the Federal Sentencing Guidelines even if his ORS § 475.922 conviction did *not* count as a serious drug offense.  Hence, we reject the premise that Hunt's sentence must reflect the court's assumption that a conviction under ORS § 475.922 counts as a serious drug offense.

4.  <u>Felon in possession.</u>  Hunt finally argues that 18 U.S.C. § 922(g)(l), which generally criminalizes firearm possession by felons, is unconstitutional as applied to a non-violent offender like Hunt.  An *en banc* panel recently rejected the argument that the Second Amendment precludes application of § 922(g)(l) to non-violent felons.  *United States v. Duarte*, 137 F.4th 743, 755 (9th Cir. 2025).

**AFFIRMED**.