**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

| | |
|---|---|
| UNITED STATES OF AMERICA, *Plaintiff-Appellee*, v. ANTHONY DELANO HYLTON, JR., *Defendant-Appellant.* | No. 21-10026 D.C. No. 2:17-cr-00086-HDM-NJK-1 OPINION |

Appeal from the United States District Court
for the District of Nevada
Howard D. McKibben, District Judge, Presiding

Argued and Submitted January 11, 2022
San Francisco, California

Filed April 5, 2022

Before: Ronald M. Gould, Mark J. Bennett, and
Ryan D. Nelson, Circuit Judges.

Opinion by Judge R. Nelson

**SUMMARY**[*]

**Criminal Law**

In a case in which the defendant was convicted on two counts of armed bank robbery and two counts of using a firearm during a crime of violence, the panel affirmed the district court's orders denying (1) a motion to suppress evidence of a gun found in the defendant's vehicle during a traffic stop, (2) a motion for judgment of acquittal, and (3) a motion to dismiss the firearm counts.

Affirming the denial of the suppression motion in which the defendant argued that officers unreasonably prolonged the traffic stop, the panel held that a criminal history check is a negligibly burdensome precaution required for officer safety, and the officers thus did not need independent reasonable suspicion to perform the criminal history check. The panel held, alternatively, that even if the criminal history check had unreasonably extended the traffic stop, the district court's application of the inevitable discovery doctrine was not clearly erroneous.

Affirming the denial of the motion for judgment of acquittal, the panel concluded that a rational jury could have found that the defendant committed both bank robberies.

Affirming the denial of the motion to dismiss the counts charging use of a firearm during a crime of violence under 18 U.S.C. § 924(c), the panel wrote that it is bound by circuit

---

[*] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

precedent holding that armed bank robbery is a crime of violence.

**COUNSEL**

Lisa A. Rasmussen (argued), Law Offices of Kristina Wildveld and Associates, Las Vegas, Nevada, for Defendant-Appellant.

Elizabeth Olson White (argued), Appellate Chief; Christopher Chiou, Acting United States Attorney; United States Attorney's Office, Las Vegas, Nevada; for Plaintiff-Appellee.

**OPINION**

R. NELSON, Circuit Judge:

Anthony Hylton was convicted of two armed robberies of the same bank. Between the two robberies, the gun used in the first robbery was found in his vehicle during a traffic stop. Hylton argues that the district court erred in denying his motion to suppress the evidence of the gun. He also challenges the sufficiency of the evidence and that armed bank robbery is not a crime of violence under 18 U.S.C. § 924(c). We affirm the district court's orders.

I

This case involves two bank robberies at the same bank, with a challenged search, seizure, and arrest in between. In October 2016, a masked man wearing dark clothing, sunglasses, and gloves robbed a bank in Henderson, Nevada. He brandished a black handgun with brown grips. During

the robbery, he ejected an unexpended round onto the bank floor before he jumped over the counter to the teller's side, discharged a round into the floor next to the teller, and ordered the teller to give him all the money in the drawers. He stole almost $70,000 before escaping in a black midsized SUV that looked like a Ford Escape. Witnesses described him as a black male between the ages of 25 and 30, between five feet ten inches and six feet five inches, and between 175 and 250 pounds.

In December 2016, police received a call that a vehicle was stopped in the middle of one of the busiest intersections in Las Vegas. Around 6:13 a.m., police responded and found Hylton non-responsive at the wheel of the vehicle. The officers smelled marijuana coming from the car.

The officers knocked on the window and were eventually able to wake Hylton. He appeared to be disoriented and confused, with pills stuck to his sweatshirt. The officers originally thought Hylton was under the influence of some type of drug, possibly marijuana. The police instructed Hylton to exit the vehicle with his license and registration. Hylton got out of the car without his license or registration and told the officers these documents were in the backseat. Officer Hinkel could not locate the license and registration in the backseat but did find, in plain sight, a closed gun case with a gun inside. Hinkel placed the gun in the patrol car. A check to see if the gun was stolen came back negative. He then returned to the car to look for the license and registration in the front seat and only found crushed pills and a half empty bottle of alcohol.

Officer Childers began conducting field sobriety tests, which was standard police practice under the circumstances. Hylton failed two of the three field sobriety tests. The officers then contacted their sergeant for advice since they

were uncertain if Hylton was impaired. They decided to request a drug recognition expert ("DRE") to the scene, which is standard policy when the officers determine the sobriety tests are inconclusive.

Around 6:41 a.m., while waiting for the DRE to arrive, the officers once again asked Hylton for his identification, driver's license, and registration. Hylton claimed these documents were in the vehicle, but again, the officers could not locate them. The officers then asked for Hylton's name and date of birth. They used this information to perform a check on his driver's license, registration, insurance, open warrants, and criminal history. Two minutes after the other information came through, the criminal history check came back, showing that Hylton was a felon. At 6:49 a.m., the officers arrested Hylton for being a felon in possession of a firearm and canceled the call for the DRE, who was still on his way to the scene.

The gun confiscated from Hylton was a black handgun with brown wooden handle grips, just like the gun that was used in the bank robbery. The ballistics from this gun matched the ballistics from the round fired by the robber in the October robbery. After being charged and having the gun seized, Hylton was released.

In January 2017, the same Citibank branch was robbed by seemingly the same robber, brandishing what looked like a silver revolver. The robber took almost $18,000 during this robbery and escaped in a black Ford Escape.

Investigators used this information to search for similar Ford Escapes registered to addresses associated with black males in counties near the bank. This search yielded three matches, with one of the vehicles being registered to Hylton's girlfriend. She told investigators that Hylton was

the only man with access to her car.  After executing a search warrant at both Hylton and his girlfriend's residences, Hylton was arrested for bank robbery. Hylton was indicted on five charges: two counts of bank robbery for the October 2016 and January 2017 robberies; two counts of a use of a firearm during and in relation to the crimes of violence of the bank robberies; and one count of felon in possession of a firearm.

Early in the case, Hylton moved to suppress the evidence resulting from the traffic stop, including the seized firearm. This motion was litigated heavily.  In the end, the district court denied the motion, holding that the officers did not unreasonably prolong the traffic stop, and even if they had, the inevitable discovery exception applied.

Hylton also moved to dismiss the two counts of using a firearm during a crime of violence, arguing that armed bank robbery is not a crime of violence.  The district court denied this motion, relying on *United States v. Watson*, 881 F.3d 782 (9th Cir. 2018), in which we held that armed bank robbery is a crime of violence.  The case went to trial and a jury found Hylton guilty on four counts, with Hylton entering a conditional plea to the felon-in-possession charge. Hylton filed a motion for a judgment of acquittal, which the district court denied.

II

We have jurisdiction under 28 U.S.C. § 1291.  A district court's "denial of a motion to suppress [evidence]" is reviewed "*de novo*, and the district court's factual findings" are reviewed for "clear error."  *United States v. Norris*, 942 F.3d 902, 907 (9th Cir. 2019).  "[T]he district court's application of the inevitable discovery doctrine" is reviewed "for clear error because, although it is a mixed question of

law and fact, it is essentially a factual inquiry." *United States v. Lundin*, 817 F.3d 1151, 1157 (9th Cir. 2016) (citation omitted). "Review under the clearly erroneous standard is significantly deferential, requiring for reversal a definite and firm conviction that a mistake has been committed." *United States v. Perkins*, 850 F.3d 1109, 1115 (9th Cir. 2017) (citation and internal quotation marks omitted).

"We review *de novo* a district court's denial of a Rule 29 motion for a judgment of acquittal." *United States v. Gagarin*, 950 F.3d 596, 602 (9th Cir. 2020). "In determining whether evidence was insufficient to sustain a conviction, we consider whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Id.* (cleaned up).

Finally, "a district court's determination that a prior conviction qualifies as a crime of a violence" is "review[ed] de novo." *United States v. Baldon*, 956 F.3d 1115, 1120 (9th Cir. 2020) (citation and internal quotation marks omitted).

## III

We first analyze the district court's denial of Hylton's motion to suppress. We affirm the district court because a criminal history check is a negligibly burdensome precaution required for officer safety. Alternatively, the district court's application of the inevitable discovery exception was not clearly erroneous.

## A

A traffic violation seizure "justifies a police investigation of that violation." *Rodriguez v. United States*, 575 U.S. 348, 354 (2015). A routine traffic stop is more

analogous to a *Terry* stop "than to a formal arrest," and it "can become unlawful if it is prolonged beyond the time reasonably required to complete the mission of issuing a" ticket for the violation. *Id.* at 354–55 (cleaned up). "[T]he tolerable duration of police inquiries in the traffic-stop context is determined by the seizure's 'mission'—to address the traffic violation that warranted the stop and attend to related safety concerns." *Id.* at 354 (citations omitted).

The government's interest in officer safety "stems from the mission of the stop itself" because "[t]raffic stops are especially fraught with danger to police officers, so an officer may need to take certain negligibly burdensome precautions in order to complete his mission safely." *Id.* at 356 (citation and internal quotation marks omitted). In making this observation, the Supreme Court cited favorably to a Tenth Circuit case, *United States v. Holt*, 264 F.3d 1215, 1221–22 (10th Cir. 2001) (en banc) (abrogated on other grounds), which it characterized as "recognizing officer safety justification[s] for criminal record and outstanding warrant checks." *Rodriguez*, 575 U.S. at 356.

Given the Supreme Court's reliance on this principle, it is unsurprising that several other circuits have held that criminal history checks are permissible post-*Rodriguez*. *See United States v. Salkil*, 10 F.4th 897, 898 (8th Cir. 2021) ("During a stop, officers may complete routine tasks, such as computerized checks of the driver's license and criminal history, and the writing up of a warning." (cleaned up)); *United States v. Palmer*, 820 F.3d 640, 651 (4th Cir. 2016) ("A police officer is entitled to inquire into a motorist's criminal record after initiating a traffic stop"); *United States v. Sanford*, 806 F.3d 954, 956 (7th Cir. 2015) (a criminal history check is "a procedure permissible even without reasonable suspicion—indeed a procedure in itself normally

reasonable, as it takes little time and may reveal outstanding arrest warrants" (citations omitted)); *see also United States v. Mayville*, 955 F.3d 825, 830 (10th Cir. 2020) ("[A]n officer's decision to run a criminal-history check on an occupant of a vehicle after initiating a traffic stop is justifiable as a 'negligibly burdensome precaution' consistent with the important governmental interest in officer safety."); *United States v. Dion*, 859 F.3d 114, 127 n.11 (1st Cir. 2017).

Hylton argues that we should ignore this caselaw because we are required by *United States v. Evans*, 786 F.3d 779 (9th Cir. 2015), to hold that the criminal history check was a prolongation of the stop and needed to be supported by independent reasonable suspicion. We disagree.

*Evans* concerned a "felon registration check," which is a computer check to see if a person is properly registered as a felon in Nevada per state law. *Id.* at 786. Because such a check is "unrelated to the traffic violation," we held in *Evans* that it cannot lawfully "prolong[] the traffic stop . . . unless there was independent reasonable suspicion." *Id.* (cleaned up). But a felon registration check only occurs after the officers know whether the person they pulled over is a felon. Whether a felon is properly registered is less related to officer safety than whether someone is a felon at all. That's why a felon registration check is "a measure aimed at detecting evidence of ordinary criminal wrongdoing," but a criminal history check is supported by an "officer safety justification." *Rodriguez*, 575 U.S. at 355–56 (cleaned up).

It's true that in a footnote in *Evans*, citing two cases from other circuits, we noted that other "courts [have] observed that extending traffic stops to perform criminal history checks may be unlawful." 786 F.3d at 787 n.7. But that observation is not controlling here for two reasons. First, we

have never otherwise held or suggested that criminal history checks are unlawful. And second, these two out-of-circuit cases, *United States v. Boyce*, 351 F.3d 1102 (11th Cir. 2003), and *United States v. Finke*, 85 F.3d 1275 (7th Cir. 1996), preceded *Rodriguez*, which "recogniz[ed] [the] officer safety justification for criminal record . . . checks." 575 U.S. at 356 (citation omitted).

Having rejected Hylton's *Evans* argument, we join our sister circuits and hold that because a criminal history check "stems from the mission of the stop itself," it is a "negligibly burdensome precaution[]" necessary "to complete [the stop] safely." *Id*. The officers thus did not need independent reasonable suspicion to perform the criminal history check.

B

Regardless, even if the criminal history check had unreasonably extended the traffic stop, the district court's application of the inevitable discovery exception was not clearly erroneous. The inevitable discovery rule is an exception to "[t]he doctrine requiring courts to suppress evidence as the tainted 'fruit' of unlawful governmental conduct." *Nix v. Williams*, 467 U.S. 431, 441 (1984). It applies if, by "following routine procedures, the police would inevitably have uncovered the evidence." *United States v. Young*, 573 F.3d 711, 721 (9th Cir. 2009) (internal quotation omitted).

Here, the officers discovered the gun during the part of the stop that Hylton concedes was lawful, before any alleged prolongation began. The district court reasoned that even if the officers had returned the gun and ended the stop before the criminal history check was completed, they still would have discovered that Hylton was a felon only two minutes later. At that point, the officers would have concluded that

Hylton was a felon in possession of a gun (in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2)) and would have pulled him over again and seized the gun. This straight-forward application of the inevitable discovery rule was not clearly erroneous.

IV

Next, we conclude that the verdict was supported by sufficient evidence. Hylton's main argument is that there is not enough evidence to prove his "identity as the perpetrator" of the bank robberies. But "viewing the evidence in the light most favorable to the prosecution," *Gagarin*, 950 F.3d at 602, we have no trouble concluding that a rational jury could have found that Hylton committed both bank robberies.

Evidence supports the conclusion that the same person committed both robberies. Both robberies involved a black man using a similar looking vehicle to rob the same bank branch in the same manner. Multiple witnesses also identified the same person as having committed both robberies, based on the sound of his voice.

Evidence also supports the conclusion that Hylton committed these robberies. First, the distinctive car used in the robberies only matched three addresses associated with black men near the bank, with one of these vehicles being registered to Hylton's girlfriend. She testified that Hylton was the only man allowed to use her car.

Second, the gun used in the first robbery was found in Hylton's possession during the traffic stop and then seized by police. Hylton also had a holster for the gun, the owner's manual, and ammunition in the house that matched that used in the first robbery. Hylton gave inconsistent statements

about how he received possession of the gun.  The robber then used a different gun in the second robbery after police seized Hylton's gun.

Third, Hylton matched the description of the robber.  And although he claimed to be a busy realtor, he let phone calls go to voicemail during the robberies and paid past-due rent bills a few hours after the first robbery.  The police also found money in Hylton's house that was rubber banded consistent with a bank robbery.

Taken together, there is ample evidence for "any rational trier of fact" to find that Hylton was the bank robber in both robberies.  *Gagarin*, 950 F.3d at 602.

V

Finally, we previously have held that "armed bank robbery is a crime of violence."  *Young v. United States*, 22 F.4th 1115, 1121 (9th Cir. 2022); *see also Watson*, 881 F.3d at 784.  Although Hylton argues that we should re-examine these holdings, he does not argue that "the reasoning or theory of" these cases is "clearly irreconcilable with the reasoning or theory of intervening higher authority."  *Miller v. Gammie*, 335 F.3d 889, 893 (9th Cir. 2003) (en banc).  We are thus bound by these prior holdings and conclude here that armed robbery is a crime of violence.

VI

In conclusion, the motion to suppress was properly denied because a criminal history check is a negligibly burdensome precaution required for officer safety.  And regardless, even if the stop had been impermissibly extended, the inevitable discovery exception applies because the gun would have been discovered anyway.  Finally,

Hylton's conviction was supported by sufficient evidence, and armed bank robbery is a crime of violence under prior circuit precedent.

**AFFIRMED.**